IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

```
---------------------------------------------------x
In re:                                   :
                                         :    In Chapter 13
         CATHERINE GONZALEZ              :
                                         :    Bankruptcy No. 15-10628 (ELF)
                              Debtor.    :
---------------------------------------------------x
```

# THE CITY OF PHILADELPHIA'S REPLY BRIEF
# IN SUPPORT OF OBJECTION TO CONFIRMATION
# OF THE DEBTOR'S FOUTH AMENDED CHAPTER 13 PLAN

On April 22, 2016, Catherine Gonzalez (the "Debtor") submitted her Brief in Support of Plan Confirmation ("Debtor's Brief") which, pursuant to the Court's April 13, 2016 Order, addresses: a) whether the Debtor has timely invoked her right to redeem her residential real property pursuant to 53 P.S. § 7293; and, b) if so, whether the Debtor may treat the amount required to be paid to the Purchaser[1] under 53 P.S. § 7293 as an allowed secured claim that may be modified pursuant to 11 U.S.C. §§ 1322(b)(2) and 1325(a)(5).

With respect to whether the Debtor timely redeemed, the City respectfully refers the Court to its Objection to the Debtor's Second Amended Chapter 13 Plan and, specifically, pages 3-6 and 11-15.  In addition, the City notes that, in support of her argument that she timely exercised her right to redeem, Debtor takes the position that the Property was "real property of the Estate" and the Debtor's Plan, as filed on January 29, 2015, intended to pay the delinquent taxes on the Property, thereby tolling the redemption period.  *See* Debtor's Brief, p. 1.  The Debtor's position is contrary to law and misstates the Debtor's interest in the Property as of the Petition Date.

---

[1] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the City's Objection to the Debtor's Second Amended Chapter 13 Plan [Docket No. 73].

Following a Sheriff's Sale, the purchaser takes "**<u>absolute title to the property</u>**, **<u>free and discharged of all tax and municipal claims</u>**, liens, mortgages, ground rents, charges and estates of whatsoever kind, subject only to the right of redemption as provided by law." 53 P.S. § 7283 (emphasis added).[2] The Debtor neither owned the Property nor did she owe pre-petition taxes on the Property as of the Petition Date. In addition, the Debtor lost her right of possession upon acknowledgment and delivery of the deed to the Purchaser on July 14, 2014, well before the Petition Date. *City of Philadelphia v. F.A. Realty Inv'rs Corp.*, 95 A.3d 377, 386 (Pa. Cmwlth. Ct. 2014) (prior owner is entitled to possession of the property until the sale is completed by the acknowledgment and delivery of the deed). Thus, as of the Petition Date, the Debtor had only a right of redemption. Attempting to pay the City for the delinquent taxes, which had already been paid by the Purchaser, was not an effective attempt at redemption. Accordingly, the redemption period was not tolled by the Plan as filed on January 29, 2015. *See e.g.*, *In re Connors*, 497 F.3d 314, 321 (3d. Cir. 2007). The Debtor failed to take any appropriate steps to redeem the Property before the redemption period expired on April 14, 2014 and the right to redeem was lost.

The Purchaser's interest in the Property as of the Petition Date is also determinative of whether the Purchaser had a secured claim that can be modified pursuant to the Bankruptcy Code. State law governs the substance of claims and a creditor's entitlements in bankruptcy arise from the underlying substantive law creating the debtor's obligation. *Raleigh v. Illinois Dep't of*

---

[2] Since Section 7283 of the MCTLA is interpreted pursuant to the Statutory Construction Act of 1972. 1 Pa. C.S.A § 1502(a)(1)(i). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa. C.S.A. §1921(b). Generally, "the best indication of legislative intent is the plain language of the statute." *First Union Nat. Bank. v. Estate of Shevlin*, 897 A.2d 1241, 1245 (Pa. Super. 2006). Further, the "General Assembly does not intend a result that is absurd, impossible of execution or unreasonable." 1 Pa. C.S.A. § 1922(1). In this case, the statute is clear and free from all ambiguity. The Purchaser received absolute title to the Property as a result of the sale.

2

*Revenue*, 530 U.S. 15, 20 (2000). The underlying substantive law that purportedly creates a secured claim in the Purchaser and an obligation in the Debtor to redeem is the MCTLA.

It is well established that under the MCTLA, redemption "is a process by which a former owner of a property which has been the subject of a sheriff's sale may [petition the court to] re-purchase the property within a fixed time by paying the amount that was bid at the sheriff's sale, plus costs." *Shevlin*, 897 A.2d at 1244, *citing*, 53 P.S. § 7293; *see also, City of Philadelphia v. Miller*, 126 A.2d 812, 816 (Pa. Super. Ct. 1956) (redemption under the MCTLA proceeds through sale and re-conveyance by the purchaser to the owner); *City of Philadelphia v. F.A. Realty Investors Corp.,* 95 A.3d 377 (Pa. Cmwlth. Ct. 2014) (after a tax sale the previous owners have a right of possession until acknowledgement of the deed, but the ownership interest is divested at the time of sale).

The elements of the redemption price support the plain language of the statute granting absolute title to the purchaser. The redemption amount includes

> [P]ayment of the amount bid at [Sheriff's Sale]; the cost of drawing, acknowledging, and recording the sheriff's deed; *the amount of all taxes and municipal claims, whether [or] not entered as liens, if actually paid; the principal and interest of estates and encumbrances, not discharged by the sale and actually paid; the insurance upon the property, and other charges and necessary expenses of the property, actually paid, less rents or other income therefrom*, and a sum equal to interest at the rate of ten per centum per annum thereon, from the time of each of such payments.

53 P.S. § 7293 (emphasis added), *see also, City of Philadelphia v. Watkins*, 494 A.2d 1135, 1137 (Pa. Super. 1985) (costs for renovations, carpeting, casualty and liability insurance fall within the definition of "other charges and necessary expenses"); *City of Philadelphia to Use of Philadelphia Hous. Dev. Corp. v. Novick*, 582 A.2d 1363, 1367 (Pa. Super. 1990) (expenses incurred to evict a delinquent tenant from property purchased at Sheriff's Sale were recoverable from redeeming

3

party); *City of Philadelphia v. King Kai Chin*, 511 A.2d 214, 216 (Pa. Super. 1986) (repairs to make premises habitable, insurance, taxes paid and amounts paid for gas, water and sewer services were reimbursable from redeeming party).

The Debtor claims the Purchaser held only an inchoate interest in the home securing a right to payment of the redemption amount. *See* Debtor's Brief, p. 4. As of the Petition Date, however, there was no interest in the Property that the Purchaser could take from the Debtor that had not already been lost. Accordingly, there was no obligation or right to payment the Purchaser could enforce. The Purchaser held title and the right to possess the Property as of the Petition Date. There was nothing the Purchaser needed to do to perfect title to the Property.

If Sheriff's Sale purchasers took anything less than absolute title to the property at the sale, then all of the purchasers in the foregoing cited cases would have been exposed to claims for trespass or fraud by the former homeowners for improving and insuring property they do not own. As the City has argued, one of the stated purposes of the Sheriff's Sale process is to place properties back upon the productive tax rolls. The MCTLA is designed to transfer absolute title to the purchasers at the sale – not upon expiration of the redemption period – in furtherance of that objective.

Debtors are forced to look beyond the plain language of the MCTLA when attempting to find support for the notion that a purchaser at Sheriff's Sale has a claim for the redemption amount secured by a lien against the property. Here, the Debtor, as others have before her, asks this Court consider four cases from Illinois: *In re Bates*, 270 B.R. 455 (Bankr. N.D. Ill. 2001); *In re Lamont*, 487 B.R. 488 (E.D. Ill. 2012); *Salta Grp., Inc. v. McKinney*, 380 B.R. 515 (C.D. Ill. 2008); *In re Kasco*, 378 B.R. 207 (Bankr. N.D. Ill. 2007). All of these cases are inapposite because the system for collecting delinquent taxes and the interests transferred pursuant to a tax sale in Illinois are

4

markedly different than those provided for in the MCTLA.  Illinois' relevant tax code provisions are outlined as follows:

> The Illinois Tax Code states that on January 1 of each year, a lien attaches to all non-exempt real property securing the payment of the taxes levied on that property in that year. 35 Ill. Comp. Stat.. 200/21–75. This lien has priority over all other liens on the property, even those prior in time. *Id.* If the taxes are not paid, the county may bring an action to foreclose the lien and seek a judgment and order of sale in the Illinois Circuit Court. *Id.;* 35 Ill. Comp. Stat.. 200/21–150 through 21–185. The landowner/ tax debtor then has the opportunity to pay the delinquent taxes and interest up to and including one business day before the sale. 35 Ill. Comp. Stat.. 200/21–165.
>
> If the taxes are not paid, the collector may proceed with the tax sale. 35 Ill. Comp. Stat.. 200/21–205. Potential ***tax purchasers*** (or bidders) compete or "reverse bid" for the right to buy the taxes. Each bidder agrees to pay the taxes and any interest and fees due to the county. In addition, tax purchasers can make a return on their investment by charging the landowner a "penalty" or premium interest rate on top of that sum. 35 Ill. Comp. Stat.. 200/21–215.
>
> The penalty is where the "reverse" bidding occurs. The maximum penalty a bidder may charge a landowner is 18 percent. *Id.* The potential purchasers engage in reverse bidding, offering successively lower penalties. The winner is the bidder offering the lowest penalty rate.
>
> That winning tax purchaser pays to the county all taxes, interest and fees due and owing. In return, once the tax sale is approved by a judge, the purchaser receives a ***"certificate of purchase"*** and the tax lien is extinguished. 35 Ill. Comp. Stat.. 200/21–240, 200/21–75. ***The landowner/tax debtor, however, remains personally liable to the county for the taxes even after the lien is extinguished***. 35 Ill. Comp. Stat.. 200/21–440.
>
> ***For a prescribed period after the tax sale (during the redemption period), the landowner may still redeem his property by depositing the full amount of delinquent taxes, plus interest and the appropriate penalty, with the county clerk. 35 Ill. Comp. Stat.. 200/21–355. The county then passes this along to the tax purchaser.***

5

> ***If the landowner does not redeem the property within the redemption period, the certificate of purchase gives the tax purchaser the right to petition the circuit court for a tax deed at any time within six (6) months of the expiration of the applicable redemption period.*** *35 Ill. Comp. Stat.. 200/21–260(f), 200/21–350.* ***The purchaser cannot receive the deed, however, until after expiration of the redemption period. After the redemption period, the circuit court may order the county collector to issue the purchaser a tax deed and place the purchaser in possession of the property.*** *35 Ill. Comp. Stat.. 200/22–40.*

*In re LaMont*, 487 B.R. 488, 491-92 (N.D. Ill. 2012) (emphasis added), *see also*, *In re Bates*, 270 B.R. 455, 459-61 (Bankr. N.D. Ill. 2001); *Salta Grp., Inc. v. McKinney*, 380 B.R. 515, 517-18 (C.D. Ill. 2008).

The most glaring distinction between the MCTLA and the Illinois Tax Code is that in Illinois, no title to property is transferred at a tax sale. One of the cases relied upon by the Debtor crystalizes this distinction:

> [A]fter a tax sale [in Illinois], the debtor *still has title* to the real property and *still possesses certain rights* regarding that real property. A tax purchase certificate does not operate to transfer title. *See Petition of Conrad Gacki Profit Sharing Fund,* 261 Ill.App. 3rd 982, 984, 199 Ill.Dec. 927, 634 N.E.2d 1281 (1994) ("The holder of a tax sale certificate has no right to possession of land or title until after the redemption period expires, and, therefore, owns something less than title in fee.").

*In re Kasco*, 378 B.R. 207, 214 (Bankr. N.D. Ill. 2007).  As noted above, in Philadelphia, Pennsylvania, the homeowner loses title to the property upon consummation of the Sheriff's Sale and loses the right to possession upon acknowledgment/recording of the deed.

A second important distinction between the Illinois Tax Code and the MCTLA is that in Illinois, if a homeowner fails to redeem his taxes, he can lose the real property on which the taxes were assessed if the tax purchaser enforces his *in rem* right to obtain the real property by way of a tax deed.  In Pennsylvania, if a homeowner fails to exercise his right to redeem he loses only the

6

right to redeem – everything else has already been lost.  There is no right the Purchaser can enforce against the Debtor, *in rem* or otherwise to secure payment of the redemption amount and there is nothing the Purchaser must do to perfect title to the Property, thus, the Purchaser does not have a claim against the Debtor that can be modified pursuant to 11 U.S.C. §§ 1322(b)(2) and 1325(a)(5).

WHEREFORE, the City respectfully requests that this Court DENY confirmation of the Fourth Amended Chapter 13 Plan of Catherine Gonzalez.

Respectfully submitted,

THE CITY OF PHILADELPHIA

Dated: April 28, 2016          By:     */s/ Megan N. Harper*
                                       MEGAN N. HARPER
                                       Deputy City Solicitor
                                       PA Attorney I.D. 81669
                                       Attorney for the City of Philadelphia
                                       City of Philadelphia Law Department
                                       Municipal Services Building
                                       1401 JFK Boulevard, 5th Floor
                                       Philadelphia, PA  19102-1595
                                       215-686-0503 (phone)
                                       Email: Megan.Harper@phila.gov