**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

IN RE:  **CATHERINE GONZALEZ,**  :  **Chapter 13**
              :
       **Debtor**     :  **Bky. No.  15-10628 ELF**

# A M E N D E D   O P I N I O N

## I.  INTRODUCTION

This chapter 13 case presents the following issue:

> **Following a tax sale conducted pursuant to 53 P.S. §7283, may a debtor who files a chapter 13 bankruptcy case before the expiration of the redemption period provided by 53 P.S. §7293(a), treat and provide for the amount that must be paid to the tax sale purchaser to redeem the property under 53 P.S. §7293 as an allowed secured claim under 11 U.S.C. §§1322(b)(2) and 1325(a)(5)?**

Courts throughout the country are divided on the powers of a chapter 13 debtor following a tax sale that is subject to a right of redemption.  See, e.g., In re Richter, 525 B.R. 735, 746-47 & n.15 (Bankr. C.D. Cal. 2015) (collecting cases).

As explained below, while I find this to be a close question, I join two (2) bankruptcy courts and a district court in this district and the bankruptcy court in the Western District of Pennsylvania in holding that a debtor may treat the amount that must be paid to the tax sale purchaser to redeem under 53 P.S. §7293(a) as an allowed secured claim subject to modification in a chapter 13 plan pursuant to 11 U.S.C. §1322(b)(2) and 1325(a)(5).[1]

---

[1] See In re Minor, 2016 WL 1256286 (E.D. Pa. Mar. 30, 2016), aff'g, 531 B.R. 564 (Bankr. E.D. Pa. 2015); In re Pittman, 2016 WL 2620810 (Bankr. E.D. Pa. May 6, 2016); In re Terry, 505 B.R. 660 (Bankr. E.D. Pa. 2014); aff'd on other grounds, 543 B.R. 173 (E.D. Pa. 2015); In re Hammond, 420 B.R. 633 (Bankr. W.D. Pa. 2009).

## II.  BACKGROUND AND PROCEDURAL HISTORY

Catherine Gonzalez ("the Debtor) is the former record owner of the residential real property located at 7231 Leonard Street, Philadelphia, PA ("the Property").  On May 21, 2014, the City of Philadelphia ("the City") exposed the Property to a tax sale on account of approximately $15,000.00 due in delinquent real estate taxes.  At the time of the sale, the Property also was encumbered by a mortgage presently held by SRP 2013-10, LLC ("SRP") with an unpaid balance of approximately $14,700.00.

Jian Zhu Lin ("Lin") purchased the Property at the tax sale for a bid of $70,000.00.  The bid was more than sufficient to pay all outstanding real estate taxes on the Property. The Sheriff of Philadelphia County conveyed the Property to Lin by sheriff's deed on July 14, 2015.

On January 29, 2015, less than nine (9) months after the acknowledgment of the sheriff's deed, the Debtor commenced this chapter 13 bankruptcy case.  She filed her bankruptcy schedules and initial chapter 13 plan the same day.

In her bankruptcy schedules, the Debtor listed herself as the "fee owner" of the Property, with a value of $100,000.00.  (See Schedule A).  The Debtor listed three (3) creditors holding claims secured by the Property: the City (for $10,000.00), Lin (for $3,000.00) and SRP (for $2,000.00).  (See Schedule D).

The Debtor's initial chapter 13 plan makes no explicit reference to the exercise of the Debtor's right of redemption under 53 P.S. §7293 (nor do any of the subsequently filed amended plans, for that matter).  The initial plan provided for payment of $10,000.00 plus 9% "present

value interest"[2] to the City and payment of $2,000.00, plus 7.3% present value interest to SRP.

The Debtor's amended chapter 13 plan, filed on October 27, 2015 made two (2) material changes to the initial plan:

> (1) it provided for the $10,000.00 payment to go to Lin, rather than the City[3] and

> (2) it increased the proposed SRP payment to $14,000.00.[4] .

On February 9, 2016, the Debtor filed a secured proof of claim on behalf of Lin in the amount of $70,000.00.  No objection to that claim has been filed.

The Debtor's most recent proposed plan, the Fourth Amended Plan, filed on April 11, 2016 (hereafter, "the Plan") is funded with payments from the Debtor to the Chapter 13 Trustee totaling $34,682.97.  The Plan again provides for payment of the Lin and SRP secured claims as follows:

> (1) $70,000.00, plus 6% present value interest, for a total of $81,197.77 for Lin; and

> (2) a total payment of $15,508.24 to SRP on account of its filed secured proof of claim of $14,772.66, (the difference presumably being present value interest at

---

[2]     See 11 U.S.C. §1325(a)(5)(B)(ii).

[3]     The plan made no provision for any distribution to the City.  After filing the amended plan on October 27 2015, which no longer provided for any payment to the City, the Debtor filed a secured proof of claim on behalf of the City on December 15, 2015 in the amount of $10,128.00.  The Debtor withdrew that proof of claim on February 9, 2016, the same day that he filed a proof of claim on behalf of Lin.  The Debtor's counsel has offered no explanation why it took him so long to conform the Debtor's proof of claim filings to the terms of the proposed chapter 13 plan.

[4]     On June 15, 2016, SRP  filed a secured claim in the amount of $14,772.66.  No objection to that claim has been filed.

some undisclosed interest rate).

Both Lin and the City of Philadelphia ("the City") (collectively, "the Objectors") object to

confirmation of the Debtor's chapter 13 plan.[5]  There are a number of confirmation issues,

including:

1.  May the Debtor treat the amount required to redeem the Property under 53
    P.S. 7293 as an allowed secured claim payable over the life of her chapter 13
    plan?

2.  Was the Debtor's attempt to exercise her redemption right through her
    bankruptcy case timely?

3.  Does the Plan provide Lin with an adequate present value interest rate?

4.  Does the Plan provide adequately for "insurance upon the property, and other
    charges and necessary expenses of the property" under 53 P.S. 7293?

5.  Is the Plan feasible insofar as it provides that the distribution to Lin will be
    funded largely from funds presumed to be held by the sheriff?

The first two (2) issues have been briefed[6] and are ready for decision.[7]

---

[5]    The City carried the laboring oar in articulating the objections to confirmation.  Lin
incorporated the City's arguments by reference.  (See Doc. # 74).  Therefore, I rely on the City's brief in
considering the arguments made in opposition to confirmation.

[6]    At the most recent confirmation hearing, held on April 12, 2016, the parties and the court
agreed that it would be most economical and efficient for the court to resolve the two (2) initial issues
before the parties undertook the time and expense of preparing for and conducting an evidentiary hearing
to resolve the other confirmation issues (several of which are fact-intensive in nature).

[7]    The last brief was filed on April 28, 2016.

## III.  DISCUSSION

### A.  Pennsylvania Law

**1.**

When a debtor enters the bankruptcy system, state or non-bankruptcy federal law usually determines the scope and nature of a debtor's property interests and the debts subject to adjustment.  See Butner v. United States, 440 U.S. 48, 54–55 (1979); In re Brannon, 476 F.3d 170, 176 (3d Cir. 2007).  The next part of the bankruptcy process involves the application of federal bankruptcy law to those pre-existing relationships, i.e., the extent to which the provisions of the Bankruptcy Code permit the Debtor to modify those preexisting relationships.  See generally United States v. Energy Res. Co., 495 U.S. 545, 549 (1990) (the bankruptcy court has "broad authority to modify creditor-debtor relationships" within the scope of its jurisdiction).

Accordingly, the nature of the Debtor's relationship to Lin and the Property under Pennsylvania law as of the commencement of her chapter 13 bankruptcy case, provides the starting point for analysis in this contested matter.

**2.**

Under Pennsylvania law, the City may expose a tax delinquent property to a tax sale.  See 53 P.S. §7283(a).  Following a tax sale, the successful bidder takes title to the property "clear of all claims, liens, mortgages, ground rents, charges and estates," with the proceeds "distributed in accordance with the priority of the remaining claims, liens, mortgages, ground rents, charges and estates."  Id.  Thus, the tax sale purchaser "take[s]  . . .  absolute title to the property sold, free and discharged of all tax and municipal claims, liens, mortgages, ground rents, charges and

estates of whatsoever kind." Id. However, the purchaser's ostensible "absolute title" is "**subject . . . to the right of redemption as provided by law**." Id. (emphasis added). The statutory provision governing the right of redemption referenced in §7283 is 53 P.S. §7293.[8]

53 P.S. §7293(a) provides that an owner of a property, that was continuously occupied by an individual or a family as a residence during the ninety (90) days prior to the tax sale and that remains occupied after the acknowledgment of the sheriff's deed, has the right to redeem the property.[9]

---

[8]      For a discussion of the statutory antecedents of 53 P.S. §7293, see Pittman, 2016 WL 2620810, at *4.

[9]      53 P.S. §7293(a) provides:

> The owner of any property sold under a tax or municipal claim, or his assignees, or any party whose lien or estate has been discharged thereby, may, except as provided in subsection (c) of this section, redeem the same at any time within nine months from the date of the acknowledgment of the sheriff's deed therefor, upon payment of the amount bid at such sale; the cost of drawing, acknowledging, and recording the sheriff's deed; the amount of all taxes and municipal claims, whether not entered as liens, if actually paid; the principal and interest of estates and encumbrances, not discharged by the sale and actually paid; the insurance upon the property, and other charges and necessary expenses of the property, actually paid, less rents or other income therefrom, and a sum equal to interest at the rate of ten per centum per annum thereon, from the time of each of such payments. If both owner and creditor desire to redeem, the owner shall have the right so to do only in case he pays the creditor's claim in full. If more than one creditor desires to redeem, the one who was lowest in lien at the time of sale shall have the prior right, upon payment in full of the claim of the one higher in lien. Within nine months, one who was lower in lien may redeem from one higher in lien who has already redeemed, and the owner may redeem from him; and so on throughout, in each case by paying the claim of the one whose right was higher; and one higher in lien may redeem from one lower in lien, unless his claim is paid; but in each case the right must be exercised within nine months.

(continued...)

The right of redemption must be exercised within nine (9) months from the date of acknowledgment of the sheriff's deed.  To exercise the right of redemption, the owner must file a petition in state court ("the Redemption Petition").  Id. §7293(b).[10]   The owner must pay the tax sale purchaser the amount bid at the sale, plus certain other amounts designated by statute (together, "the Redemption Amount"). The mechanical process for delivery of the Redemption Amount and the restoration of the owner's title is subject to the control of the court after the Redemption Petition has been filed and the court has determined the owner's eligibility to exercise the right of redemption.  See City of Philadelphia Chin, 535 A.2d 110, 110-12 (Pa. Super. Ct. 1987). As a result, the actual payment of the Redemption Amount may be made after the expiration of the nine (9) month statutory redemption deadline; it is the Redemption Petition that must be filed before the deadline.[11]

 Upon redemption of the property, all parties are restored to the positions they had prior to

---

[9](...continued)
 The statute refers to the former record owner of the property as "the owner."  I will use the terms interchangeably in this Opinion.


[10]    53 P.S. §7293(b) provides:

> Any person entitled to redeem may present his petition to the proper court, setting forth the facts, and his readiness to pay the redemption money; whereupon the court shall grant a rule to show cause why the purchaser should not reconvey to him the premises sold; and if, upon hearing, the court shall be satisfied of the facts, it shall make the rule absolute, and upon payment being made or tendered, shall enforce it by attachment.


[11]    See 53 P.S. §7293(b); U.S. Bank Nat'l Ass'n v. Parker, 962 A.2d 1210, 1212 (Pa. Super. Ct. 2008); City of Philadelphia v. Philadelphia Scrapyard Properties, LLC, 132 A.3d 1060, 1066-67 (Pa. Commw. Ct. 2016); Chin, 535 A.2d at 112-13.

the tax sale, including all liens and encumbrances that were divested by the sale and the sheriff's

deed.  See City of Philadelphia v. Miller, 126 A.2d 812, 814 (Pa. Super. Ct. 1956).


### 3.

As stated above, the successful purchaser at a tax sale receives a sheriff's deed, see 53

P.S. §§7283(b), 7293(a), that conveys title free and clear of existing liens and encumbrances.

However, the purchaser's rights are qualified materially by the owner's right of redemption.  In

other words, the "bundle of rights"[12] the purchaser receives through the tax sale and sheriff's

deed is limited during the redemption period.  Most notably, the property owner's equitable

interest in the property includes a superior right of possession.  See, e..g., Pittman, 2016 WL

2620810, at *5-6; Terry, 505 B.R. at 663.[13]  The Hammond court summarized the purchaser's

post-deed delivery status as follows: "The purchaser's only absolute interest in the property until

the redemption period expires is to receive the money paid on redemption."  Hammond, 420 B.R.

---

[12]     "[T]he old concept of property as a physical object has given way to the present concept
of considering property as a bundle of rights or interests pertaining to the physical object."  Com., Dep't
of Transp. v. Myers, 522 A.2d 112, 114 (Pa. Commw. Ct. 1987); Associates Fin. Servs. Co. v. O'Dell,
417 A.2d 604, 607 (Pa. 1980); see generally Burns v. PA Dep't of Correction, 544 F.3d 279, 287-88 (3d
Cir. 2008) (discussing the origin of the "bundle of rights" metaphor for property ownership); Estate of
Gibbs v. United States, 161 F.3d 242, 247 (3d Cir. 1998) (same).


[13]     The City cites City of Philadelphia v. F.A. Realty Inv'rs Corp., 95 A.3d 377, 386 (Pa.
Cmwlth. Ct. 2014) for the proposition that the prior owner is entitled to possession of the property only
until the sale is completed by the acknowledgment and delivery of the deed.  The Commonwealth Court
did make that statement in dictum, but in doing so relied on two (2) decisions (Rodriquez ex rel.
Rodriquez v. SCG Mortgage Corp., 865 A.2d 987, 990-91 (Pa. Commw. Ct. 2005) and Garrett v. Dewart,
43 Pa. 342 (1862)), neither of which involved tax sales or the right of redemption under 53 P.S. §7293 or
its predecessor statutes.  With respect to tax sales governed by 53 P.S. §§7283, 7293, the Commonwealth
Court's dictum in F.A. Realty Inv'rs Corp. was incorrect.  Accord Pittman, 2016 WL 2620810, at *6-8.

at 635.

In effect, by granting the owner possession and the right of redemption, what the statute

giveth with one (1) hand (title free and clear), it largely taketh away with the other, at least

temporarily during the redemption period.    Due to the limited nature of the purchaser's property

rights during the redemption period, the tax sale deed has been described as conveying mere

"defeasible title."  Hammond, 520 B.R. at 635; see also Pittman, 2016 WL 2620810, at *5 (citing

Pennsylvania case law).

Viewing the status of the property from the perspective of the former record owner, the

owner retains an interest in the property during the redemption period.  One of those interests is

the right of possession.  The U.S. Supreme Court has described the right of possession  – or, the

right to possess property to the exclusion of others  – as "one of the most treasured strands in an

owner's bundle of rights." Loretto v. Teleprompter Manhattan CATV Corp., 102 S. Ct. 3164,

3176 (1982).  Of course, the owner also retains the right to regain all of the incidents of

ownership that were lost at the tax sale, including record ownership, by exercising the right of

redemption.  Thus, it is not surprising that one court in this district described the owner as

"retain[ing] substantial interests in the property" during the redemption period.  Terry, 505 B.R.

at 663.


## B.  The Parties' Positions

The Debtor's position is that the Redemption Amount constitutes a bankruptcy claim that

is a secured claim that may be modified and satisfied in a chapter 13 plan pursuant to 11 U.S.C.

§§1322(b)(2) and 1325(a)(5).

In response, Lin and the City argue that the Debtor has no "obligation" to pay Lin the Redemption Amount (i.e., Lin has no "right to payment," see 11 U.S.C. §101(5)(A))[14] and therefore, the Redemption Amount is not a bankruptcy "claim" that may be provided for and modified in a chapter 13 plan.

The Objectors conceptualize the Debtor's redemption right as being in the nature of an asset of the bankruptcy estate: a right to re-purchase the Property, but like most other property rights, one that is defined and circumscribed by state law.   Here, the Objectors focus on the state law temporal limitation on the Debtor's right of redemption  – that the right of redemption must be exercised within the later of the statutory nine (9) month period (or sixty (60) days after the commencement of the bankruptcy case, pursuant to 11 U.S.C. §108(b)).[15]  In short, the Objectors

---

[14]    11 U.S.C. §101(5)(A) provides, in pertinent part, that a claim means:

> [a] right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured.

[15]    11 U.S.C. §108(b) provides:

> [I]f applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period within which the debtor or an individual protected under section 1201 or 1301 of this title may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, before the later of --
>
> > (1)  the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
> >
> > (2) 60 days after the order for relief.

-10-

posit that a bankruptcy debtor may exercise the right of redemption under 53 P.S. §7293, but

only upon strict compliance with the state statutory process, including its time deadlines and the

statutory expectation that, as part of a timely redemption, the Redemption Amount will be paid in

a lump sum, not in an extended instalment plan.  Thus, in this case, the Objectors make two (2)

related, but distinct, arguments, that: (1) the Debtor's rights must be exercised in strict

conformity with 53 P.S. §7293 and (2) in any event, the Debtor failed to initiate the redemption

process in a timely manner under 53 P.S. §7293.

### C.  The City's Lack of Standing

The City is not a creditor in this bankruptcy case and has acknowledged that its

prepetition tax claim was paid in full from the proceeds of Lin's tax sale bid.  Regardless whether

the Debtor or Lin prevails in this dispute, nothing will change the City's status as a former

creditor whose claim was satisfied in full prior to the commencement of this case.  Yet,

concerned that permitting chapter 13 debtors to provide for unexpired redemption rights in a

chapter 13 plan may reduce the efficacy of its tax sales of delinquent properties (by reducing their

attractiveness to would-be purchasers), the City has attempted to participate actively in this

chapter 13 case in opposition to confirmation of the Plan.[16]

In light of the absence of a debtor-creditor relationship between the Debtor and the City

as of the commencement of this case, the obvious question is whether the City has standing to

---

[16]      The City describes its interest in tax sales as two-fold: "1) to collect
longstanding delinquencies; and 2) to place tax delinquent properties back on the productive tax
rolls."  (City Memorandum at 8).  (Doc. # 73).

-11-

object to confirmation of the Plan.[17]

In <u>Minor</u>, a case in which the City also lacked a prepetition claim against a debtor seeking

to effect a redemption through a chapter 13 plan but nonetheless objected to its confirmation, the

district court thoroughly discussed the issue of the City's standing.  There, too, the City argued

that it has an interest in protecting what it considers the integrity of its tax sale process by

limiting the duration of time in which a timely redemption can be implemented in bankruptcy

cases.  The <u>Minor</u> court rejected the City's argument, holding that the City's interests were not

directly affected by the debtor's bankruptcy plan and that any potential harm the City might

suffer due to a lengthier redemption process in bankruptcy cases was merely "potential,

non–immediate, and indirect." <u>Minor</u>, 2016 WL 1256286, at *4; <u>see also</u> <u>In re Tyndale</u>, 534 B.R.

272, 274-75 (Bankr. E.D. Pa. 2015).

I am not bound by the district court's decision in <u>Minor</u>,[18] but its reasoning is persuasive

and I will follow it.  Therefore, while the City's hostility to the Debtor's position and its desire to

keep tax sales sacrosanct is understandable from an abstract policy perspective, the City's

---

[17]    "Questions of standing, if they exist, must be considered sua sponte, as they are akin to
subject matter jurisdiction." <u>In re Total Containment, Inc.</u>, 2008 WL 682455, at *9 n. 11 (Bankr. E.D.
Pa. Mar.5, 2008); <u>see also</u> <u>Elkin v. Fauver</u>, 969 F.2d 48, 52 n. 1 (3d Cir. 1992); 2010 WL 5093380, at *6
(Bankr. E.D. Pa. Dec.7, 2010).

[18]    <u>E.g.</u>, <u>In re D'Angelo</u>, 475 B.R. 424, 439 (Bankr. E.D. Pa. 2012), <u>aff'd</u>, 491 B.R. 395
(E.D. Pa. 2013) ("In a multi judge district, bankruptcy courts of that district are not bound by the
pronouncements of a single district court judge.")(citations omitted);  <u>In re Washington</u>, 2006 WL
6613649, at *4-6 (Bankr. E.D. Pa. Mar. 13, 2006), <u>rev'd and remanded on other gr'ds</u>, 2007 WL 846658
(E.D. Pa. Mar. 19, 2007); <u>see generally</u> <u>Threadgill v. Armstrong World Indus., Inc.</u>, 928 F.2d 1366, 1371
(3d Cir. 1991) ("doctrine of stare decisis does not compel one district court judge to follow the decision
of another").

objection to confirmation of the Plan will be overruled for lack of standing.[19]

### D.  Analysis

Pennsylvania, like other jurisdictions, provides a right to redemption to a homeowner following a tax sale of residential real property.  The relationship between the tax sale purchaser and (former record) owner, as well as their respective rights and obligations inter sese, are well defined under Pennsylvania law, as discussed above.  Far less clear is federal bankruptcy law's characterization of that relationship and the extent to which, the right of redemption may be exercised within a bankruptcy case.

Two (2) opposing judicial views have emerged in the national case law regarding the nature of the relationship between the debtor/former record owner and the tax sale purchaser and the manner in which a bankruptcy debtor may pay the Redemption Amount and regain full ownership of his or her property.

### 1.

Courts that do not permit a debtor to effect a redemption through a chapter 13 plan, represented by the thoughtful opinion in Richter, conceptualize the right of redemption as an **asset of the debtor, rather than a payment obligation**.  Perceived this way, the right of redemption is a property right that allows the debtor to augment the property of the estate with

---

[19]      Denial of the City's objection due to its lack of  standing will have very little, if any, practical effect in this case.  Lin has adopted all of the arguments raised by the City in opposition to confirmation of the Plan.  See n.5, supra.

additional incidents of ownership relating to the subject property, but only by fulfilling the

statutory redemption requirements found in nonbankruptcy law.  A debtor who chooses not to (or

is unable to) redeem has no liability to the tax sale purchaser; the debtor simply foregoes the

opportunity to buy additional property.  See Richter, 525 B.R. at 747-49 & n.16.

In rejecting the notion that a debtor-creditor relationship exists between the debtor/owner

and the purchaser, these courts conclude that the purchaser does not hold a "claim" as that term is

used in the Bankruptcy Code.  Absent a bankruptcy claim, a debtor has nothing to treat and

provide for in a chapter 13 plan under 11 U.S.C. §§1322(b)(2) and 1325(a)(5), leaving only the

exercise of the debtor's state law rights strictly in accordance with applicable nonbankruptcy law,

enhanced only, perhaps, by 11 U.S.C. §108(b).[20]

Whether the tax sale purchaser holds a bankruptcy claim depends upon whether the

purchaser has a "right to payment."  See 11 U.S.C. §101(5).  In Richter, 525 B.R. at 747, the

court articulated the theory that the purchaser has no right to payment:

---

[20]    The perception of the right of redemption as a debtor's property right causes courts to
look to 11 U.S.C. §108(b) as the Code provision that defines the scope of the debtor's rights.  Section
108 imposes a time limit on the bankruptcy estate's exercise of certain rights: the later of the state law
deadline or 60 days after the order for relief.

It is certainly reasonable to consider the right of redemption (which is exercised by the
filing of a state court petition) as constituting "applicable nonbankruptcy law [that] fixes a period within
which the debtor . . .  may file any pleading, demand, notice, or proof of claim or loss, **cure a default, or
perform any other similar act**" (emphasis added), as those terms are used in §108(b).

The question posed in this case, however, is whether the relationships created by a
debtor's state law redemption rights are more appropriately governed by other provisions of the
Bankruptcy Code, i.e., 11 U.S.C. §§1322(b) and 1325(a)(5).  If so, §108(b) is irrelevant; a debtor's
exercise of the powers under §§1322(b) and 1325(a)(5) is not constrained by §108(b).

> While it is true that a debtor will lose his remaining interest in the property as a consequence of not redeeming, the threat of this loss alone is insufficient to establish the purchaser's ''right to payment.'' The ''right to payment'' requires, in addition to enforceability, that there be an obligation.  .   .   . Yet, with statutory redemption, what the debtor has is not an obligation or duty to pay the redemption price to avoid losing ownership of the property but a voluntary *right* or *opportunity* to pay the redemption price in order to regain ownership.

(italics in original) (footnote omitted).[21]

When the right of redemption is viewed as an estate asset, it resembles an unexpired, unexercised option to purchase real property.[22]   The categorization of such options in bankruptcy is not entirely clear.  They may or may not be executory contracts.[23]  But no matter.  Either way, the bankruptcy estate may reap the benefits of a prepetition agreement only if the debtor performs

---

[21]      In Richter, the court also considered an alternative legal theory advanced by debtors seeking to exercise their redemption rights in a chapter 13 plan, i.e., that it is authorized by the broad language of 11 U.S.C. §1322(b)(3).  Based on §1322(c)(1) and acceptance of what is known as the "gavel rule," the Richter court rejected the debtor's argument.  525 B.R. at 742-26.  In the case sub judice, the Debtor has not invoked §1322(b)(3) and I express no opinion on the issue.

[22]      The right of redemption also bears similarity to an agreement of sale of real property. However, I perceive the right of redemption to more closely resemble a purchase option than an agreement of sale.  Upon expiration of the option, the debtor typically has no personal liability to the other party; the debtor would simply forfeit the right to purchase the property for the agreed price.  By comparison, a debtor's decision not to perform under the sale contract, gives rise to a potential claim for damages for breach of contract.  If considered an executory contract, its rejection indisputably gives rise to a bankruptcy claim.  See 11 U.S.C. §§365(g), 502(g)(1).

[23]      Compare In re Robert L. Helms Constr. & Dev. Co., Inc., 139 F.3d 702, 705-06 (9th Cir. 1998) (typical option does not require further performance by either party as of the commencement of bankruptcy case and therefore, is not executory) with In re RoomStore, Inc., 473 B.R. 107, 111-14 (Bankr. E.D. Va. 2012) (even though not yet triggered on a debtor's petition date, contingent obligation is executory because it represents a continuing duty to perform if the contingency occurs).

-15-

his or her obligations under the agreement without modification,[24] subject only, perhaps to a right to assume the agreement and promptly cure any default, <u>see</u> 11 U.S.C. §365(b)(1).

If the right of redemption is akin to a purchase option, and perceived as an "asset" and not a debt, it follows that a chapter 13 plan (exercising the "option" over a 60 month term) is unconfirmable. The reason for this is that the option must be exercised in a manner consistent with state law without modification. In the tax sale redemption context, there is no legal authority suggesting that a Pennsylvania state court would approve a Redemption Petition that provided for a sixty (60) month instalment plan for payment of the Redemption Amount.[25]

---

[24]    <u>See</u> <u>In re Smith</u>, 449 B.R. 35, 40-41 (Bankr. E.D. Pa. 2011); <u>In re Pittman</u>, 289 B.R. 448, 450-451 (Bankr. M.D. Fla. 2003); <u>In re Kellstrom Indus.</u>, 286 B.R. 833, 835 (Bankr. D. Del. 2002)  <u>In re Wallace</u>, 122 B.R. 222, 233 (Bankr. D.N.J. 1990); <u>In re A.J. Lane & Co.</u>, 107 B.R. 435, 437 (Bankr. D. Mass. 1989).

[25]    Thus, if a debtor's redemption rights are merely an estate asset, a chapter 13 plan exercising that right is confirmable only it provides for full payment of the Redemption Amount within the time deadline established by state law (subject only to 11 U.S.C. §108(b) and, perhaps, 11 U.S.C. §365(b)(1)).

The degree to which the Bankruptcy Code overrides state law deadlines for paying obligations secured by a debtor's real property is not a new issue. Almost thirty (30) years ago, our Court of Appeals considered the question whether the right to cure a mortgage default under 11 U.S.C. §1322(b)(5) terminated upon: (a) contractual acceleration; (b) entry of a foreclosure judgment; (c) the fall of the gavel at the foreclosure sale; or (d) upon expiration of the redemption period. The court held that, under New Jersey law, the right to cure terminated, upon the entry of the foreclosure judgment. In re Roach, 824 F.2d 1370, 1372-73 (3d Cir. 1987).

The court's holding in Roach was grounded largely on its view that "no substantial federal interests that would justify ignoring property interests created by the judgment of a New Jersey court and that Congress did not intend to give home mortgage debtors the right to set aside or suspend state court judgments." Id. at 1377. Roach was legislatively overruled in 1994 by the enactment of 11 U.S.C. §1322(c)(1), which provides that a default on a debt secured by a debtor's principal residence may be cured under §1322(b)(3) or (b)(5) "until such residence is sold at a foreclosure sale that is conducted in accordance with applicable nonbankruptcy law." In re Connors, 497 F.3d 314, 320-21 (3d Cir. 2007), the Court of Appeals held that the term "foreclosure sale" in §1322(c)(1) refers to "fall of

(continued...)

**2.**

Alternatively, courts that permit debtors to redeem property through a chapter 13 plan

focus on the facts that the owner retains a meaningful and substantial "interest" in the property

following a tax sale and that the owner will lose that interest in property unless money is paid.

These courts conclude that the Redemption Amount is a bankruptcy "claim" because (a) the

_____

[25](...continued)
the gavel" at the sheriff's auction and not the delivery of the sheriff's deed following the sale.

        Neither Roach nor Connors controls the issue presented in this case. Both decisions involve the limitation on a chapter 13 debtor's right to cure a default, not modify a secured claim. Neither decision involved a right of redemption and a debtor's attempt to modify the rights of a tax sale purchaser under §1322(b)(2).

        By its express terms, 11 U.S.C. §1322(c)(1) imposes a deadline for invoking §1322(b)(3) or (b)(5) to effect a cure of a prepetition default (in this Circuit after Connors, that deadline being the fall of the gavel). However, §1322(c)(1) imposes no statutory deadline for modifying a secured claim under §1322(b)(2). The only reference to §1322(b)(2) in §1322(c) is the indirect reference to it in §1322(c)(2). Section 1322(c)(2) does not impose any temporal limitations and, in fact, does not limit the powers of a chapter 13 debtor, but rather expands the debtor's rights by overriding the "anti-modification" clause of §1322(b)(2) in certain cases. Thus, unlike the right to cure certain debts, the Code provides no express prepetition date that terminates a debtor's right to invoke the power to modify a secured claim under §1322(b)(2) and there is no textual reason to find one in the Code. If anything, the existence of §1322(c)(1) suggests otherwise by negative implication. Thus, in the end, the outcome in this case turns solely on the categorization of the right of redemption: does the tax sale purchaser holds a secured claim or not?

        I recognize that, notwithstanding the textual statutory analysis above, dictum in Roach suggests that a debtor cannot overcome the temporal limitations of 53 P.S. §7293 by treating the Redemption Amount as a modifiable secured claim. See Roach, 824 F.2d at 1372 n.1 ("[T]he parties err when they focus on how much of a property interest the [debtors] retained following the foreclosure sale. . . . [The Debtors'] right of redemption lapsed after 60 days following the petition."). At the same time, however, the Roach court went to great lengths to point out that the text of §1322(b) establishes clearly that "Congress drew a distinction between modifications and cures." 824 F.2d at 1375. In any event, Roach's vitality as a precedent is questionable at best in light of the enactment of §1322(c)(1), particularly as to its dictum on the subject of the power of a chapter 13 debtor to modify an allowed secured claim (as opposed to curing a prepetition default).

Bankruptcy Code defines the term claim in the broadest possible sense,[26] (b) the term "claim"

encompasses non-recourse claims, (i.e., a creditor's right to reach property to satisfy a monetary

obligation, even if the property owner has no personal liability to the creditor)[27] and (c) non-

recourse claims may be provided for in a chapter 13 plan.[28]

     In our context, payment of the Redemption Amount serves to avoid the loss of the former

record owner's remaining interest in the property.    The effect of the payment of the Redemption

Amount arguably is no different than what occurs when a debtor fails to satisfy any conventional

secured claim, much like a debt secured by a mortgage on residential real property.

     Indeed, when one focuses on the potential loss of the debtor's interest in the subject real

property, the similarity between the Pennsylvania tax sale purchaser/former record owner

relationship and a conventional mortgagee/mortgagor relationship becomes apparent  – and no

one can seriously question that a  mortgagee holds a bankruptcy "claim" which may be subject to

modification in a chapter 13 plan, see §1322(b)(2).[29]   This resemblance is perhaps even more

---

[26]    See, e.g., FCC NextWave Pers. Communic'ns, 537 U.S. 293, 302 (2003); In re Grossman's Inc., 607 F.3d 114, 121 (3d Cir. 2010).

[27]    See 11 U.S.C. §102(2) (claim against the debtor includes claim against property of the debtor).

[28]    See, e.g., Johnson v. Home State Bank, 501 U.S. 78, 83-84 (1991).

[29]    Some mortgage liens, specifically those arising from a security interest in real property that serves as the debtor's principal residence, may not be modified.  See 11 U.S.C. §1322(b)(2). However, the limitation on the power to modify does not alter the status of the mortgagee as a creditor

(continued...)

obvious in states in which mortgages are treated as transferring title to real property subject to

defeasance by the timely payment of the mortgage debt (as opposed to states that treat mortgages

as "mere" liens).  See generally Commerce Bank v. Mountain View Vill., Inc., 5 F.3d 34, 37 (3d

Cir. 1993).[30]  In "title theory" states, satisfaction of the mortgage debt effects a reconveyance of

title to the mortgagee, much like payment of the Redemption Amount restores title to the former

record owner.

   The view that the consequence of non-payment of the redemption amount (the debtor's

loss of his or her remaining property interests in the subject real property) renders the purchaser a

creditor holding a bankruptcy claim under 11 U.S.C. §101(5) was well summarized by one court:

> [I]t is the rights the debtor retains after the tax sale that [the purchaser] claims.
> [The purchaser] wants the Debtor's remaining equitable rights to be eliminated,

---

[29](...continued)
holding a bankruptcy "claim."

   I note also that the §1322(b)(2)  limitation on the power to modify secured claims is not
applicable in this case.  Lin does not hold a security interest.  See 11 U.S.C. §101(51) (defining "security
interest" as a lien arising by an agreement).

[30]   Mortgages were used in medieval times and eventually developed along two
avenues. The first was to treat the security instrument as conveying legal title of
the property to the creditor. Under the so called title theory, the owner
transferred the property in fee simple providing that, if he repaid the debt by a
specified date, the creditor would reconvey the property. If the owner failed to
satisfy the debt, the creditor would hold the property in fee simple. Under the
second approach, by contrast, the security instrument merely created a lien on
the property. Development of the equity of redemption in the chancery courts led
to growth of this lien theory so that, although the creditor mortgagee had legal
title, the mortgagor remained the actual owner until debarred by default or
judicial decree. In time, the only method by which the creditor could terminate
the equity of redemption was by foreclosure.

Mountain View, 5 F.3d at 37.

and it was attempting to foreclose those rights. It wants the right to possession of
the Property, the right to use the Property, the right to rent the Property, and the
full 100 percent fee interest in the Property. The foreclosure process, however,
was not completed at the time the bankruptcy petition was filed. **The Debtor is in
much the same position as the owner of property subject to a non-recourse
lien**. Even if the Debtor is not personally liable to [the purchaser] in a civil
proceeding, the Debtor's underlying obligation remains enforceable against her
property. Consequently, [the purchaser] holds a claim for the Debtor's equitable
interest remaining in the Property, including her right to use it and to possess it, or
the monetary value thereof (the redemption price).

In re Francis, 489 B.R. 262, 268 (Bankr. N.D. Ga. 2013) (emphasis added).  A substantial

number of other courts have followed this reasoning.[31]

---

[31]      A number of these decisions are from Illinois and the Debtor has cited some of them in
support of her position.  See, e.g., Salta Group, Inc. v. McKinney, 380 B.R. 515 (C.D. Ill. 2008);  In re
LaMont, 487 B.R. 488 (N.D. Ill. 2012), aff'd 740 F.3d 397 (7th Cir. 2014);  In re Kasco, 378 B.R. 208
(Bankr. N.D. Ill. 2007); In re Commings, 297 B.R. 701 (Bankr. N.D. Ill. 2003); In re Bates, 270 B.R. 455
(Bankr. N.D. Ill. 2001).  But see In re Murray, 276 B.R. 869 (Bankr. N.D. Ill. 2002).

        Lin seeks to distinguish the Illinois cases because the Illinois tax sale and redemption
process differs from the Pennsylvania process for cities of the first class.  In Illinois, the tax sale
purchaser receives only a tax sale certificate  (not a deed) upon payment of its bid, while in Pennsylvania
the purchaser receives a deed.  Thus, according to Lin, the Illinois cases are inapposite because the
Illinois homeowner still has title during the redemption period while the Pennsylvania (former) owner
does not.

        I find this distinction immaterial because the formality of record title is not relevant to
the courts that analogize the tax sale purchaser to a non-recourse creditor.  This argument fails to account
for the property rights retained by the Pennsylvania property owner even after losing record title. The
federal cases construing Pennsylvania law cited earlier hold that the former record owner retains
substantial property rights in the subject property.  If the existence of a claim depends on whether a
debtor is threatened with the loss of valuable interests in property, the existence or absence of technical,
record title is irrelevant.  Indeed, as in a state that employs the "title theory" of mortgages, it may not be
an exaggeration to state that, during the Pennsylvania redemption period, the former record owner is the
"de facto" owner of the property.

        Thus, if the Illinois cases are correctly decided, the same outcome is mandated here in
Pennsylvania.

**3.**

Each of the competing views described above in Parts III.D.1 and 2. are simultaneously logical and reasonable, yet unsatisfying to some extent.

The courts refusing to permit redemption through a chapter 13 plan have no convincing response to the proposition that in jurisdictions where the owner retains substantial property rights during the redemption period (like Pennsylvania and Illinois, see n.31, supra,), the sum of money that the owner must pay to exercise his or her right of redemption renders the owner/purchaser relationship nearly indistinguishable from the residential mortgagee/mortgagor relationship (especially in a state that treats a mortgage as a conveyance of title).[32]  These courts appear to rely too heavily on the loss of record title as constituting a final and total deprivation of the owner's property rights, without sufficient  recognition of the equitable ownership rights the former record owner retains during the redemption period and the owner's ability to regain the interests previously "lost" by exercising the right of redemption.

At the same time, the courts permitting redemption through a chapter 13 plan have articulated no limiting principle that would allow courts to distinguish the tax sale redemption relationship from other, similar relationships in which settled law establishes that a debtor's state

_____

[32]      A potential response to this critique of those decisions denying the right to redeem through a chapter 13 plan is that, absent a compelling countervailing federal interest, federal courts should not disregard the interests created by state law.  This proposition provided much of the foundation for the court's decision in Roach, 824 F.2d at 1374.  See n.25 , supra.  However, while the proposition is indisputable black letter law, it is merely one policy consideration in the construction of the Bankruptcy Code and provides only the starting point in the analysis.  The competing rehabilitative and equality of distribution purposes of the Bankruptcy Code provide ample justification for many Code provisions that override state law.  The question in this case is whether those federal bankruptcy interests are sufficient to warrant treating the term "claim" as expansive enough to encompass the Redemption Amount.

law obligations may <u>not</u> be modified by a bankruptcy reorganization plan.  I refer again to garden

variety purchase options, (as well as conventional agreements of sale, see n.22, supra ).  In both

the purchase option and agreement of sale context, the purchaser may be considered to have an

interest in real property under applicable nonbankruptcy law[33] – an interest that is forfeited if the

purchaser fails to pay the seller.  However, in neither a purchase option or agreement of sale

setting may a debtor file a chapter 13 bankruptcy case prior to the option deadline or sale closing

date and then exercise the option or effect closing through a five (5) year chapter 13 payment

plan.  Thus, the characteristic that is the linchpin of the second line of cases  – <u>i.e.</u>, that a debtor

risks forfeiture or inevitable loss of an interest in property by failing to pay a sum of money –

cannot be the sole litmus test in determining whether the relationship is a debtor/secured creditor

relationship subject to modification in a chapter 13 plan.

## 4.

This case boils down to the characterization of the relationship between a tax sale

purchaser and former record owner.  The text of the Bankruptcy Code  provides no definitive

answer. What is clear, though, is that once the nature of the relationship is classified, the outcome

is simple.  If the Redemption Amount is a secured claim, the Bankruptcy Code overrides state

---

[33]       As to agreements of sale: <u>see, e.g.</u>, <u>McCannon v. Marston</u>, 679 F.2d 13, 15 (3d Cir. Pa. 1982);  <u>Greenwood Gaming & Entm't, Inc. v. Pa. Gaming Control Bd.</u>, 609 Pa. 368, 378 (Pa. 2011); <u>Allardice v. McCain</u>, 375 Pa. 528, 536 (Pa. 1953).

As to purchase options, <u>see</u>  <u>Guido v. Twp. of Sandy</u>, 584 Pa. 93, 101-102 (Pa. 2005) <u>Detwiler v. Capone</u>, 357 Pa. 495, 499 (Pa. 1947); <u>Snyder v. Bowen</u>, 359 Pa. Super. 47, 52-53 (Pa. Super. Ct. 1986); <u>Hennebont Co. v. Kroger Co.</u>, 221 Pa. Super. 65, 69 (Pa. Super. Ct. 1972).

law and the claim may be modified in the Debtor's Plan;[34] if not, state law deadlines for the

exercise of the debtor's right of redemption control.  The issue is a close one. The relationship

between the former record owner and tax sale purchaser does not fit perfectly into either of the

two (2) competing bankruptcy cubbyholes.

That said, I conclude that the relationship between the former record owner and tax sale

purchaser to be slightly closer to the mortgagor/mortgagee relationship than to the relationship

between an optionor/optionee or even a purchaser/seller of real estate.  This is primarily because,

at the outset of the tax sale relationship, the former record owner already owned the subject

property and the prepetition state court process resulted in the loss of certain incidents of that

ownership, subject to their recovery upon the payment of money.  By invoking chapter 13, the

debtor seeks to effect the recovery of the ownership interests he or she had before the transfer of

those interests to the purchaser.  By comparison, in the option or agreement of sale context, the

debtor had no ownership interest in the subject property prior to the commencement of his or her

relationship with the other party and, by attempting to complete the transaction, is attempting to

augment his or her property interests.

While this distinction is not grounded in the text of the Bankruptcy Code, it provides an

objective basis for distinguishing among analogous relationships.  Further, it is consistent with

the fundamental purposes of chapter 13  – allowing individuals to implement payments plans to

---

[34]       See Bates, 270 B.R. at 465-67, cited with approval in Lamont, 740 F.3d at 409.

prevent the loss of their residences.[35]

For these reasons, I conclude that, in a bankruptcy filed during the redemption period

under 53 P.S. §7293, the Redemption Amount is a bankruptcy "claim" that is subject to

modification and treatment in a chapter 13 plan under 11 U.S.C. §§§1322(b)(2) and 1325(a)(5).

## 5.

Finally, Lin contends that even if a chapter 13 debtor generally has the right to effect a

redemption through a chapter 13 plan, that right expired before the Debtor proposed a chapter 13

plan to exercise the right of redemption.

Lin points out that the sheriff's deed was delivered on July 14, 2014 and that the nine (9)

month statutory redemption period lasted until April 14, 2015.  The Debtor's bankruptcy was

filed on January 29, 2015 (within the redemption period). The Debtor's initial chapter 13 plan,

also filed on January 29, 2015, provided for payment to the City of a $10,000 secured claim,

presumably for the delinquent prepetition taxes that actually were paid through Lin's $70,000.00

tax sale bid.

---

[35]      The Congressional intent of Chapter 13 was to enable an individual,
under court supervision, to reorganize and repay his debts over a certain
period of time under a structured rehabilitation plan. Instead of opting
for liquidation under Chapter 7, a debtor may retain his assets by
repaying his creditors under Chapter 13. In this manner a debtor may
save his home.

In re Bellamy, 132 B.R. 810, 813 (D. Conn. 1991); accord In re Scantling, 465 B.R. 671, 682 (Bankr.
M.D. Fla.2012), aff'd, 754 F.3d 1323 (11th Cir. 2014) ("A central purpose of Chapter 13 is to save
homes"); In re Nepil, 206 B.R. 72, 75 (Bankr. D.N.J. 1997) ("A main area of expansion [of chapter 13 as
compared to chapter  XIII under the prior Act] was the Code's recognition of the desire of homeowners to
save their homes through Chapter 13") (quoting In re Hoggle, 12 F.3d 1008, 1010 (11th Cir. 1994)).

Lin contends that mere filing of the Debtor's bankruptcy petition on January 29, 2015 does not evince an attempt to exercise the right of redemption (although it served to extend the redemption deadline by sixty (60) days, see 11 U.S.C. §108(b); In re Tynan, 773 F.2d 177, 179 (7th Cir. 1985); In re Paul, 534 B.R. 430, 432 (Bankr. M.D. Ga. 2015)).  Lin further argues that the Debtor's initial chapter 13 plan failed to serve as an attempt to exercise the right of redemption insofar as it appears to treat the City as the holder of a secured tax claim rather than Lin as the holder of a secured claim for the Redemption Amount.  The Debtor did not file a plan that provided for payment to Lin until October 27, 2015, more than five (5) months after the expiration of the nine (9) month redemption period (and more than three (3) months after the expiration of the deadline as extended by 11 U.S.C. §108(b)).  Lin contends that the plan filed on October 27, 2015 came too late, after the Debtor's redemption rights had expired.

Assuming arguendo that a debtor's chapter 13 plan must invoke the right of redemption in a timely fashion as measured by 53 P.S. §7293, Lin's argument is not without some force.[36]

---

[36]     It is not obvious, however, that Lin's assumption – that a chapter 13 plan must articulate an intention to exercise the right of redemption under 53 P.S. §7293 prior to the expiration of the statutory deadline (or extension of that deadline pursuant to 11 U.S.C. §108(b)) – is correct.

If the right of redemption has not expired when a bankruptcy case is filed and, by virtue of the state law rights afforded the owner under 53 P.S. §7293, the tax sale purchaser holds a secured claim subject to modification under §1322(b)(2), the debtor's treatment of the claim is governed by the the Bankruptcy Code, not state law, and there is nothing in §1322(b) or §1325(a) that mandates that a secured claim reference a statutory provision under nonbankruptcy law in providing for the payment of an allowed secured claim.  The debtor is merely effecting the payment of an allowed secured claim under federal bankruptcy law, not a redemption under state law, a process governed solely by the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure.  If a bankruptcy case is not proceeding at an appropriate pace, the creditor may invoke remedies such as are found in 11 U.S.C. §362(d) and §1307(c).

Under this view, 53 P.S. §7293 is not entirely irrelevant.  The statutory provision determines the elements and amount of the purchaser's monetary claim that must be provided for appropriately under 11 U.S.C. §1322(a)(5).  But for bankruptcy purposes, arguably, that is its sole

(continued...)

The initial chapter 13 plan does not use the word redemption and it purports to provide for a secured claim other than Lin, the tax sale purchaser.  From the face of the plan, it is not self-evident that the Debtor was attempting to effect a redemption under 53 P.S. §7293.

At the same time, however, the initial plan does evince the Debtor's intent to treat the Property as her own and provide a payment designed to resolve a prepetition payment delinquency.  In this respect, while it identifies the wrong creditor, it ultimately does seek to undo the effect of the tax sale and the sheriff's deed.

The most apt analogy is to treat the Debtor's initial chapter 13 as the functional equivalent of a timely petition to redeem filed in state court that sought to redeem the property but listed the wrong payee in the wrong amount.  While such a petition may not be self-sustaining, it should be capable of amendment and sufficient to satisfy the filing deadline of 53 P.S. §7293.[37]  Therefore, I am unpersuaded by Lin's untimeliness argument.[38]

---

[36](...continued)

significance; if the debtor's 53 P.S. §7293 rights are extant when the bankruptcy case is commenced, to the extent §7293 includes time deadlines for exercise of those rights, the deadlines are subject to modification under 11 U.S.C. §1322(b)(2).

In this case, for the reasons set out above in the text that follows, I need not go so far as to hold that the time deadline for exercising the right of redemption  in 53 P.S. §7293 is irrelevant if a bankruptcy case is filed during the redemption period.  As explained in the text, I conclude that the Debtor invoked her redemption rights in a timely manner.

[37]      The tax sale and redemption statutory provision appear to be in rem proceedings in state court.  It would appear that so long as the redemption provision is filed timely under 53 P.S. §7293, deficiencies in the factual allegations or in service upon interest parties should be remediable.

[38]      To the extent that I am interpreting the Debtor's plan with some degree of liberality, Lin

(continued...)

# IV.  CONCLUSION

For the reasons stated above,

1.  The City's objections to confirmation are overruled on the ground that the City lacks standing; and

2.  Lin's objections to confirmation on the grounds that: (a) the Debtor may not exercise the right of redemption under 53 P.S. §7293 through the provisions of a chapter 13 plan and (b) in this case, the Debtor's attempt to exercise her redemption right through her bankruptcy case was untimely are both overruled.

The case will proceed to confirmation at which time all remaining objections to

confirmation will be considered.  An appropriate order follows.

**Date: May 19, 2016**  _____

**ERIC L. FRANK**
**CHIEF U.S. BANKRUPTCY JUDGE**

---

[38](...continued)
is receiving the same treatment.   The issue in this case is whether Lin holds an allowed secured claim.
11 U.S.C. §502(a) states that a proof of claim "is deemed allowed, unless a party in interest   .   .   .
objects."  The Debtor filed a secured claim on behalf of Lin.  Lin has not objected to the proof of claim.

If Lin's claim is an allowed secured claim by operation of law, his objection to confirmation (on the ground that he is not a creditor holding an allowed secured claim) would have to be overruled.  Rather than ruling in such a mechanistic fashion, I have treated his objection to confirmation as also constituting an objection to the proof of claim the Debtor filed on his behalf, which has the effect of negating the proof of claim's status as an allowed secured claim.

Thus, for the benefit of both parties, I have invoked the letter and the spirit of Fed. R. Bankr. P. 1001 (the Rules of Bankruptcy Procedure "shall be construed to secure the just, speedy and inexpensive determination of every case and proceeding").  See also Dole v. Arco Chem. Co., 921 F.2d 484, 487 (3d Cir.1990) (discussing policy favoring deciding claims on the merits as opposed to technicalities).