**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

IN RE:	CATHERINE GONZALEZ,	:	Chapter 13
		:
	Debtor.	:	Bky. No.  15-10628 ELF

# M E M O R A N D U M

## I.

Presently before the court is the confirmation of the Sixth Amended Chapter 13 Plan ("the Plan") filed by Catherine Gonzalez ("the Debtor").  The Debtor is the former record owner of the residential real property located at 7231 Leonard Street, Philadelphia, PA ("the Property").  Through her Plan, the Debtor seeks to exercise her right to redeem and regain title to the Property under 53 P.S. §7293 ("§7293").  Section 7293 permits a former property owner, in certain circumstances, to redeem a property that was sold at a tax sale by paying certain sums specified in the statute ("the Redemption Amount").

Juan Zhu Lin ("Lin") was the successful bidder at the tax sale of the Property and is its current record owner.  Lin has filed objections to confirmation of the Plan.

On May 19, 2016, I issued an opinion resolving a threshold legal objection to confirmation.  I held that, following a tax sale conducted pursuant to 53 P.S. §7283, a debtor who files a chapter 13 bankruptcy case before the expiration of the nine (9) month redemption period provided by §7293(a), may treat and provide for the Redemption Amount under §7293 as an allowed secured claim under 11 U.S.C. §§1322(b)(2) and 1325(a)(5).  See In re Gonzalez, 2016 WL 2944281 (Bankr. E.D. Pa. May 19, 2016) ("Gonzalez I").

After Gonzalez I, several of Lin's (more factually based) objections to confirmation

remained. These objections ("the Objections") include:

- whether the Plan understates the amount of Lin's claim and therefore fails to provide for full payment of the claim under 11 U.S.C. §1325(a)(5)(B)(ii);

- whether the Plan provides an appropriate amount and rate of interest to satisfy the requirement that Lin receive the "present value" of her claim, see id.;

- whether the Plan is feasible, see 11 U.S.C. §1325(a)(6).

For the reasons set forth below, I will deny confirmation of the Plan for failure to satisfy the requirements of 11 U.S.C. §1325(a)(5)(B)(ii).

## II.

The procedural history of this case was set out in Gonzalez I. See 2016 WL 2944281, at *1-2.

Following Gonzalez I, the Debtor filed a Fifth Amended Plan on June 6, 2016 (Doc. # 97) and a Sixth Amended Plan on June 7, 2016 (Doc. #100). The confirmation hearing was held and concluded on June 7, 2016, the same day that the Debtor filed the Sixth Amended Plan.[1]

The Debtor, Lin, the Chapter 13 Trustee ("the Trustee") and SRP 2013-10 LLC ("SRP")[2] participated at the hearing. The Debtor and her uncle, Edward Roldan, testified. Two (2) exhibits relating to the Debtor's present income and expenses were admitted into evidence. Lin

---

[1] All of the interested parties agreed to proceed with the confirmation hearing, notwithstanding Fed. R. Bankr. P. 2002(b).

[2] SRP is the holder of the senior mortgage against the Property as of the date of the tax sale. SRP's mortgage was divested by the tax sale. See 53 P.S. §7283(a).

offered no evidence in support of the Objections.[3]

At the close of evidence, all parties relied on closing argument, rather than seeking to submit post-hearing briefs. The Debtor requested confirmation of the Plan. Lin and the Trustee took the position that the Plan should not be confirmed.

## III.

For the Debtor to accomplish her goal of regaining ownership of the Property, she must pay the Redemption Amount under §7293. Section 7293 provides, in pertinent part, that the Redemption Amount consists of the following components:

- the amount bid at the tax sale;

- the cost of drawing, acknowledging, and recording the sheriff's deed;

- the amount of all taxes and municipal claims actually paid;

- the principal and interest of estates and encumbrances, not discharged by the sale and actually paid;

- the insurance upon the property, and other charges and necessary expenses of the property, actually paid, less rents or other income therefrom;

- and a sum equal to interest at the rate of ten per centum per annum thereon, from the time of each of such payments.

---

[3] Despite offering no evidence, Lin asked me to make a factual finding regarding the amount of money she expended on taxes since the Sheriff acknowledged her deed to the Property. I decline to do so.

The Plan provides, in pertinent part,[4] for:

(1) total plan funding of **$103,604.57**, consisting of:

    (a) the Debtor's monthly plan payments to the Chapter 13 Trustee totaling **$52,857.50**;[5]

    (b) **$50,747.07** to be obtained from the Sheriff of Philadelphia County for use in the Plan, see Plan ¶ 2.C.;[6]

(2) the Debtor to effect the redemption of the Property by paying Lin the **$70,000.00** Lin paid at the tax sale, plus certain additional amounts required by §7293, resulting in a total distribution to Lin of **$79,800.89**, as follows:

    (a) **$50,747.07** (the funds obtained from the Sheriff), to be paid on or around **July 31, 2016,** shortly after confirmation of the Plan;

    (b) **$6,721.75** representing six percent (6%) interest for the period May 21, 2014 to July 31, 2016;[7]

    (c) **$19,250.93**, plus present value interest, see 11 U.S.C.

---

[4] Without going into all of the details, it is impossible to reconcile the Plan provisions and calculations in ¶ 2.C. of the Plan with those in ¶ 6 of the Plan. The recitation in the text represents my effort to harmonize and rationalize the provisions.

[5] The plan provides for payments to the trustee of **$5,882.00** paid to date plus 45 monthly payments of **$1,043.90**. The plan incorrectly states that this totals **$50,769.75**. The simple arithmetic is wrong.

[6] The Plan is inconsistent. In Paragraph 2.C., the Debtor refers to the amount to be obtained from the Sheriff as **$50,757.07**. In Paragraph 6.G., the Debtor refers to the amount to be obtained from the sheriff as **$50,747.07** and appears to calculate that amount by subtracting **$19,252.93** (the amount of Lin's bid that the Debtor believes the Sheriff applied to satisfy municipal claims and tax sale costs) from Lin's **$70,000.00** bid. As far as I can tell, Paragraph 6.G. is a more accurate statement of the Debtor's intent and the different amount in Paragraph 2.C. is a typographical error.

[7] This interest component may not be computed accurately, but it appears to be intended to provide six percent (6%) interest on **$50,747.07** of Lin's **$70,000.00** bid from May 21, 2014 (the date of the tax sale) through July 31, 2016 (the anticipated payment date of **$50,747.07**).

§1325(a)(5)(B)(ii), of **$3,081.14**, in distributions from the trustee, to be paid by the Trustee from the Debtor's monthly plan payments;[8]

(3) the Debtor to pay all post-sale real estate taxes and property insurance costs on the Property;[9]

(4) distributions from the Trustee to SRP of **$14,772.66**, plus present value interest of **$735.58**, for a total distribution of **$15,508.24**, derived from the Debtor's monthly plan payments;[10]

(5) payment of allowed unsecured claims in full;[11]

(6) payment of the Trustee's commission[12] and the Debtor's counsel fee.[13]

---

[8]     The Debtor proposes to pay six percent (6%) interest on the **$19,250.93** "over the life of the plan," Plan ¶ 6.G., and calculates that amount to be **$3,081.14**. I note also that the initial payment to Lin of **$50,747.07**, plus the balance of the claim paid over the life of the Plan, **$19,250.93**, does not quite total **$70,000.00**.

[9]     This Plan provision is designed to satisfy the requirement in §7293 that the former property owner pay all "charges and necessary expenses" incurred on the property in order to effect the redemption.

[10]    See Plan ¶ 2.D. If the Debtor effects a redemption of the Property, SRP's first mortgage position, previously divested by the tax sale, is restored. See Gonzalez I, 2016 WL 2944281, at *4 (citing City of Philadelphia v. Miller, 126 A.2d 812, 814 (Pa. Super. Ct. 1956)). Through the Plan, the Debtor seeks to satisfy that claim.

[11]    See Plan ¶ 4.B., C. However, there are no allowed unsecured claims.

[12]    On his website, the Trustee advises that the current commission rate is 7.2%. See http://www.ph13trustee.com/.

[13]    The Plan provides for payment of **$2,400.00** to the Debtor's counsel in distributions from the Trustee. See Plan ¶ 3.B.

Depending upon the amount of the Trustee's commission (not quantified in the Plan itself), these proposed distributions total either **$104,744.18** (which would render the Plan "underfunded," even on its own terms) or **$101,514.87** (slightly less than the Plan funding).[14]

## IV.

The entire purpose of the Debtor's Plan is to effect a redemption under §7293. Presently, the parties' dispute largely centers on the determination of the dollar amount necessary to redeem under §7293 and the feasibility of the Plan under 11 U.S.C. §1322(a)(6). However, based on the evidence presented at the June 7, 2016 hearing, another confirmation issue came to light relating to the requirements of §7293. I address that issue first.

Section §7293(c) provides that no person may redeem a property after the acknowledgment of the sheriff's deed if the property is "vacant." See Brentwood Borough Sch. Dist. v. HSBC Bank USA, N.A., 111 A.3d 807, 811 (Pa. Commw. Ct. 2015). Section 7293(c) defines vacant property as property that has not been:

---

[14]    If the Trustee commission is based on all of the distributions to be made, I calculate the necessary plan funding as follows:

| | |
|---|---|
| **$ 79,800.89** | distribution to Lin |
| **$ 15,508.24** | distribution to SRP |
| **$ 2,400.00** | Debtor's counsel fee |
| **$ 97,709.13** | **Subtotal** |
| **$   7,035.05** | Trustee commission of 7.2% on Subtotal |
| **$104,744.18** | **Total** |

If the Debtor serves as the disbursing agent for the lump sum payment to Lin derived from the funds held by the Sheriff, the Trustee commission drops to **$3,805.74** (7.2% on **$52,857.50** in monthly plan payments) and the total plan funding necessary is **$101,514.87**.

> continuously occupied by the same individual or basic family unit as a residence for at least ninety days prior to the date of the sale and continues to be so occupied on the date of the acknowledgment of the sheriff's deed.

During the course of the hearing, a startling revelation came to light – the Debtor no longer resides in the Property. The Debtor testified that she was raised by her aunt and uncle, Edward and Aida Roldan, whom she considered to be like her "parents;" that she lived with the Roldans in the Property for an extended period of time prior to the May 2014 tax sale (well in excess of the statutory ninety (90) day period); and that she moved out of the Property upon getting married in mid-2015 (after the commencement of the bankruptcy case).

In light of the Debtors testimony, Lin lodged an additional objection to confirmation on the basis that the Debtor may not redeem the Property because it had not been continuously occupied by the same individual or basic family unit, and, therefore, was "vacant" within the meaning of §7293.

Whether a property is "vacant" under §7293, in the sense of actual occupancy, is a factual determination, that takes into account "whether anyone was habitually physically present at the property, i.e., regularly sleeping and eating there and using it as a place to dwell. . . ." Brentwood, 11 A.3d at 813. This aspect of statutory "vacancy" is not an issue in this case. The Debtor testified that she lived in the Property in the period ninety (90) days prior to the tax sale through the acknowledgment of the deed. Edward Roldan testified that he and his wife have lived in the Property since approximately 2003 (and continue to reside there). I accept their unrebutted testimony. Thus, the actual occupancy requirement has been satisfied.

The unrebutted testimony also satisfies the statutory duration requirement (i.e., from ninety (90) days prior to the date of the sale to the date of the acknowledgment of the sheriff's

deed). The Debtor's departure from the Property after the acknowledgment of the deed is irrelevant under the plain terms of §7293.

Still open is the question whether the Debtor and the Roldans were a "basic family unit" under the statute.

The term "basic family unit" is not defined in the statute. However, a recent Commonwealth Court decision, City of Phila. v. Phila. Scrapyard Props., LLC, 132 A.3d 1060, 1066 (Pa. Commw. Ct. 2016), aids my application of the term in this case.

In Phila. Scrapyard Props., the court employed a broad definition of the term "basic family unit." The court did not limit the scope of the term to blood relations; rather, it defined the term as "the fundamental part of a group of individuals living under one roof." The court held that the term encompassed a group of six (6) college students who rented from the owner of the property being redeemed. Cf. City of Phila. v. Gardiner, 2015 Phila. Ct. Com. Pl. LEXIS 124, at *6 (C.P. Phila. May 5, 2015) (property found "vacant" because the subject property contained two (2) apartments leased to separate tenants who were not part of the same individual or family unit).[15]

On the strength of Phila. Scrapyard Props., I conclude that the Debtor has satisfied her burden of establishing that the Property was continuously occupied by the same individual or basic family unit. Even under a more traditional (and narrower) interpretation of the term "family unit" than that employed by the Phila. Scrapyard Props. court, the Debtor and the

---

[15] The Phila. Scrapyard Props. court also held that even though one (1) of the six (6) tenants moved out during the redemption period, the "basic" family unit remained intact, leaving the former property owner eligible to redeem. Id. ("We . . . conclude that the change of one individual in a six person 'basic family unit' does not result in vacant property under the Act").

Roldans satisfy the statutory requirement. In both biological and functional terms, they occupied the Property as a family unit for the requisite period under §7293.

For these reasons, Lin's objection to confirmation on this ground is overruled.

## V.

### A.

No judicial opinion in this jurisdiction has discussed in detail how the requirements of §7293 flow into the confirmation requirements of 11 U.S.C. §1325(a) when a debtor seeks to employ a chapter 13 plan to redeem a property under §7293. Therefore, before addressing the remaining Objections, I will briefly describe the relationship between the two (2) statutes.

#### 1.

11 U.S.C. §1325(a)(5)(B) sets out the requirements for the treatment of an allowed secured claim if the Debtor opts to pay the allowed secured claim through the plan and the holder of the claim has not accepted the plan. The primary confirmation requirements are that the plan:

> (1) provide for the creditor to retain its lien until the earlier of full payment of the debt or the entry of discharge; and
>
> (2) pay the present value, as of the effective date of the plan, of the full allowed secured claim.[16]

See, e.g., 8 Collier on Bankruptcy ¶1325.06[3] (Alan N. Resnick, Henry J. Sommer eds., 16th ed. 2016) ("Collier"); Keith M. Lundin, Chapter 13 Bankruptcy §101.1 (4th ed. 2016) ("Lundin").

---

[16]   Section 1325(a)(5)(B)(iii)(I) also requires that the periodic payments be in equal monthly amounts. No objection on this ground has been asserted.

The "present value" requirement mandates, in the absent of consent, that the plan provide for post-confirmation interest on a creditor's allowed secured claim. E.g., In re Soppick, 516 B.R. 733, 752-53 (Bankr. E.D. Pa. 2014);

In Gonzalez I, I observed that §7293 provides the substantive law for determining the amount of the tax sale purchaser's allowed secured claim. 2016 WL 2944281, at *3. Section 7293 instructs that the Redemption Amount, much like a traditional mortgage, is a "moving target," to some extent. The Redemption Amount includes not only the purchaser's original disbursement (the tax sale bid), but also various other expenses and charges that are incurred or accrue after the creation of the initial debt (e.g., title transfer expenses, interest). Furthermore, the Redemption Amount includes additional advances that the tax sale purchase may make during the course of the entire redemption period (e.g., ongoing costs of maintaining the property, such as taxes and insurance).

**2.**

To evaluate the treatment of the Redemption Amount under 11 U.S.C. §1325(a)(5), it is helpful to consider three (3) distinct time periods:

    (1) prepetition;

    (2) postpetition/pre-confirmation; and

    (3) post-confirmation.

The prepetition component of the tax sale purchaser's allowed secured claim is grounded in §7293. Thus, in addition to the tax sale bid, the claim includes:

    (1) any additional amounts advanced by the purchaser for transaction costs and any expenses "necessary to the property," see §7293(a), such as taxes and insurance and

    (2) interest at the statutory rate (10%).

Generally, the purchaser's allowed secured claim is fixed upon the filing of the bankruptcy case. However, if the value of the secured property exceeds the outstanding indebtedness, the tax sale purchaser may augment its allowed secured claim in the postpetition/pre-confirmation period by claiming interest at the statutory rate of 10%. See 11 U.S.C. §506(b).[17]

In the postpetition/pre-confirmation period, another component of the Redemption Amount in §7293 affects the requirements of a debtor's chapter 13 plan. The debtor's obligation to pay the expenses "necessary to the property" continues into the postpetition /pre-confirmation

---

[17]     Section 506(b) instructs that the tax sale purchaser's allowed secured claim includes postpetition/pre-confirmation interest at the statutory rate, ten percent (10%). Section 506(b) provides:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, **there shall be allowed to the holder of such claim, interest** on such claim, and any reasonable fees, costs, or charges **provided for under the** agreement **or State statute** under which such claim arose.

(emphasis added).

    There is case law suggesting that a bankruptcy court has the discretion to reduce the contractual or statutory interest rate on equitable grounds for claims other than tax claims or administrative expenses. Compare In re Nixon, 404 F. App'x 575, 578-79 (3d Cir. 2010) (nonprecedential) (affirming bankruptcy court's exercise of discretion to modify statutory interest rate and citing authorities), with In re Bernbaum, 404 B.R. 39, 42-43 (Bankr. D. Mass. 2009) (enactment of 11 U.S.C. §511 abrogated case law holding that a bankruptcy court has discretion under §506(b) to modify statutory interest rate for tax claims).

    In this case, no party has raised any issues under §506(b).

period. A debtor employing a chapter 13 plan to redeem a property under §7293(a) must address that requirement.[18]

Finally, the post-confirmation treatment of the allowed secured claim is governed by 11 U.S.C. §§1322(b)(2) and 1325(a)(5). Section 1322(b)(2) permits the debtor to modify the rights of the holder of the allowed secured claim. In the §7293 redemption context, §1322(b)(2) permits the debtor to pay the allowed secured claim over the life of the chapter 13 plan, rather than in a single payment. Section 1322(b)(2) also permits the debtor to modify the interest rate to be paid on the claim to satisfy the requirement under 11 U.S.C. §1325(a)(5) that the plan provide for payment of the "present value" of the allowed secured claim. See In re Watson, 384 B.R. 697, 704 n.8 (Bankr. D. Del. 2008); In re Flores, 2006 WL 4452973, at *2-5 (Bankr. D.N.J. Mar. 29, 2006); 8 Collier ¶ 1325.06[3][b]; Lundin §111.1; see also Till v. SCS Credit Corp., 541 U.S. 465, 468-69 (2004).

One last point. The debtor's obligation to pay the expenses "necessary to the property"

---

[18] A chapter 13 plan effecting a redemption resembles a plan providing for payment of an allowed secured claim for the entire mortgage balance when the mortgage includes provisions authorizing the lender to advance payments for taxes and insurance and to add those payments to the outstanding indebtedness. The expenses "necessary to the property" under §7293 parallel the mortgage provisions authorizing the lender to make advances for charges like taxes and insures.

In the mortgage context, if the debtor does not provide a mechanism to pay the property expenses, the secured creditor may be entitled to relief from the automatic stay under 11 U.S.C. §362(d). A debtor's chapter 13 plan might provide for the expenses "necessary to the property" in different ways. The debtor might make these payments directly to the third party insurer or taxing authority (to avoid the need for the tax sale purchaser to advance the payment and seek reimbursement from the debtor). Or, the debtor might reimburse the tax sale purchaser for such advances in the form of adequate protection payments. With the purchaser's consent, the debtor might also include repayment of these obligations in the post-confirmation plan distributions. All of these mechanisms should be available to the debtor in the §7293 redemption context.

continues into the post-confirmation period and, once again, the plan must address the issue.

**B.**

Turning now to the merits of the confirmability of the Plan under the Bankruptcy Code, Lin is correct that the Plan is not confirmable because it does not provides for: (a) the full payment of Lin's claim; and (b) the present value of the claim. See 11 U.S.C. §1325(a)(5)(B)(ii).[19] Therefore, her objection to confirmation will be sustained.

The Plan provides for payment of Lin's **$70,000.00** claim, based on the proof of claim the Debtor filed on her behalf, in two (2) phases.

First, the Plan provides for an initial payment of **$50,747.07** on July 31, 2016. It also provides for the payment of 6% interest on the **$50,747.07** for the period of May 21, 2014 (the date of the tax sale) to the anticipated distribution date of July 31, 2016. The Debtor calculates this interest component to be **$6,721.75**.

---

[19] This dispute over the proper amount of Lin's allowed secured claim arises in a strange procedural posture.

The Debtor filed a proof of claim on behalf of Lin. Lin neither objected to the claim nor sought to file a superseding claim. See generally In re Sacko, 394 B.R. 90 (Bankr. E.D. Pa. 2008) (absent undue delay or prejudice to the debtor, creditor may file superseding claim to claim filed by the debtor on behalf of the creditor under Fed. R. Bankr. P. 3004). Lin contends that the amount the Debtor proposes to pay is too low. The correct procedure here would have been for Lin to file a superseding claim or, perhaps, an objection to the claim the Debtor filed on her behalf.

Even though Lin did not follow the proper procedure, I decided to treat Lin's objection to confirmation as the functional equivalent to an objection to the proof of claim the Debtor filed on Lin's behalf. Lin's objection is that the claim is too low and should be allowed in a higher amount. Obviously, this is somewhat counterintuitive; claim objections in bankruptcy typically challenge a filed claim as being too high, not too low. For the reasons explained in Gonzalez I, however, I consider this approach to be appropriate and in the interest of justice in this case. See 2016 WL 2944281, at *13 n.38.

Second, the Plan provides for payment of the balance of Lin's claim (**$19,250.93**) through the Debtor's monthly plan payments to the Trustee, plus interest at 6%, for an additional **$3,081.14**.[20]

All of these payments total **$79,800.89.**

A comparison of the statutory requirements described in Part IV.A. to the Debtor's Plan, reveals the flaws in the methodology of the Debtor's Plan.

Lin is entitled to the state law statutory rate of interest, 10%, on her **$70,000.00** payment to the Sheriff from the date of payment through the effective date of the Plan. Thus, the Debtor's starting point is too low. Using the proper interest rate for this time period,[21] Lin's allowed secured claim exceeds her initial bid and payment to the Sheriff by **$15,359.17**.[22] Lin's allowed secured claim, as of the effective date of the Plan, is at least **$85,359.17**,[23] an amount that does

---

[20]    It appears that the Debtor arrived at the interest amount by amortizing **$19,250.93** at 6% over 60 months.

[21]    For present purposes, I will use July 31, 2016 as the proposed effective date of the Plan.

[22]    Section 7293 requires interest from the date of each expenditure made by the purchaser (starting with the payment of the sheriff's sale bid). The record does not establish when Lin paid his **$70,000.00** bid. The Debtor's Plan uses the sheriff's sale date, May 21, 2014 as the start date for the accrual of interest on Lin's **$70,000.00**. If anything, that is generous to Lin. So, I will accept that date as the starting point and run the interest calculation through what may be considered the Plan's effective date (July 31, 2016 – the date the Debtor would substantially pay down Lin's claim, using the money presently held by the sheriff). The calculation is as follows: 10% annual interest divided by 12 months x 26.33 months x **$70,000.00** = **$15,359.17**.

[23]    Potentially, Lin's allowed secured claim could be higher if Lin made presented for taxes and insurance after taking record title to the Property. Currently, there is no competent evidence of that

(continued...)

exceeds the proposed distribution to Lin by **$5,558.28** and does not take into account post-confirmation "present value" interest Lin is entitled to receive. It follows that the plan underfunded, employing even the most debtor-favorable calculation of the plan funding, see n.14, supra.[24]

For these reason, the Plan does not satisfy 11 U.S.C. §1325(a)(5)(B)(ii) and cannot be confirmed.

## VI.

### A.

In light of the denial of confirmation, what happens next in this case?

When the confirmation hearing was held on June 7, 2016, the Trustee's motion to dismiss this case was pending, but not scheduled to be heard on the same date as the confirmation hearing.[25] At the conclusion of the confirmation hearing, the Debtor expressed her intention to file yet another proposed amended plan in the event that confirmation of the Plan were denied, an

---

[23](...continued)
in the record. See n.3, supra.

[24]    I perceive no problem with the Debtor's employment of a six percent (6%) present value interest rate following the effective date of the Plan. However, as explained in Part VI.B.1, infra, the balance of Lin's allowed claim remaining after the initial pay-down from the funds held by the Sheriff may be higher than that proposed in the Plan.

[25]    The separation of the hearings on a trustee's motion to dismiss and confirmation is an aberration in this district. It occurred here by happenstance because the court neglected to reschedule the hearing on the Trustee's motion after the decision in Gonzalez I was issued.

eventuality that has come to pass. Consequently, I will set a deadline for the Debtor to file any further amended plan, set a tentative date for a confirmation hearing and reschedule the hearing on the Trustee's motion to dismiss.[26]

**B.**

A considerable amount of time has passed since the commencement of this case without confirmation of a plan.[27] In the interest of bringing this matter to a conclusion at the next hearing, I point out below certain other problematic aspects of the Plan (hereafter, "last-filed Plan"), apart from its failure to fully fund Lin's claim.

**1.**

First, the last-filed Plan contemplated that all of the funds presently held by the Sheriff will be used by the Debtor to pay down Lin's claim from approximately **$70,000.00** to approximately **$20,000.00**. However, under applicable nonbankruptcy law, SRP is entitled to a

---

[26]  By scheduling another confirmation hearing, I do not prejudge any arguments the Trustee or Lin may make in favor of dismissal of this case under 11 U.S.C. §1307(c) for prejudicial delay without consideration of the merits of the confirmability of another proposed chapter 13 plan.

  Further, if I do consider the merits of another proposed plan, I am putting the Debtor on notice that this likely is the last proposed plan that will be considered. This case is subject to dismissal, if not on the Trustee's motion, but also on the court's own motion, if a plan is not confirmed for any reason at the next confirmation hearing.

[27]  While the Debtor is primarily responsible for the delays in this case, Lin, too, is partially responsible. Lin waited many months before pressing for a decision on confirmation of the Debtor's chapter 13 plan.

distribution from the funds held on account by the Sheriff before such funds may be distributed to the Debtor.  See 53 P.S. §7283 (after payment of taxes and municipal liens, tax sale proceeds "shall be distributed in accordance with the priority of the remaining claims, liens, mortgages, ground rents, charges and estates").  Thus, the Debtor sought to fund the last-filed Plan with SRP's property.

If the Debtor seeks to fund the next plan in the same way and SRP objects to the Debtor's use of its property in this manner, (i.e., the Debtor's use of SRP's property to repay Lin), the plan cannot be confirmed.

**2.**

Second, SRP's approximate **$15,000.00** interest in the funds held by the Sheriff reduces the amount of money available for the Debtor's intended initial lump sum payment to reduce Lin's allowed secured claim.  The Debtor may be entitled to devote only approximately **$35,000.00** of the funds held by the Sheriff (rather than the approximately **$50,000.00** contemplated in the last-filed Plan) for an initial payment on account of Lin's claim.[28]  Thus, under any amended plan, the initial pay down of Lin's claim will leave a higher balance (in comparison to the last-filed Plan) to be satisfied through the Debtor's monthly plan payments and the Trustee's distributions over time.  This will result in a higher amount of post-confirmation present value interest to which Lin would be entitled under 11 U.S.C. §1325(a)(5)(B).

On the other hand, if SRP's claim is paid in full with the funds from the Sheriff at or near

---

[28]  In round numbers, the Sheriff has distributed approximately **$15,000.00** to the City on account of municipal claims.  Of the remaining **$55,000.00**, SRP is entitled to approximately **$20,000.00**, which would leave approximately **$35,000.00** available to pay Lin.

the effective date of an amended plan, the plan would not have to provide post-confirmation present value interest on account of SRP's claim. The Debtor will need to calculate whether these savings offset the increased distribution necessary to Lin.

### 3.

Third, the last-filed Plan provided for the Debtor to pay all real estate taxes and insurance falling due during the pendency of the Plan. If carried into the next plan, this provision is problematic because the last-filed Plan neither quantified the amount she will be obliged to pay (and was not quantified at the last confirmation hearing) nor provided a concrete mechanism for doing so. This makes it difficult to evaluate the feasibility of the Plan. See 11 U.S.C. §1325(a)(6).

### 4.

Finally, the feasibility of the Plan was contested at the last confirmation hearing. The evidence established conclusively that the Debtor and her husband do not reside in the Property and that, at best, their household income is adequate to cover only their ongoing monthly expenses at their current residence; they have little, if any monthly income available to contribute to the Plan by way of monthly payments to the Trustee. The Debtor's aunt and uncle, the Roldans, reside in the Property and it is their income that is the only possible source for the monthly plan payments to the Trustee.

While I make no findings at this time on the issue of plan feasibility at this time, I observe that the adequacy of the Roldan household income has not been established and remains at issue

if the Debtor proposes another plan and the plan is considered on the merits at the next hearing in this case.

## VI.

For the reasons set forth above, confirmation of the Debtor's Sixth Amended Plan is denied.

An order consistent with this Memorandum will be entered.

Date: **July 12, 2016**

**ERIC L. FRANK**
**CHIEF U.S. BANKRUPTCY JUDGE**